KATHRYN R. LIBRA, Plaintiff and Appellant, v. A. L. LIBRA, Defendant and Respondent.

No. 11695.
Submitted April 15, 1971.
Decided May 7, 1971.
484 P.2d 748.

See also 154 Mont. 222, 462 P.2d 178.

William Dee Morris, argued, Helena, Sandall, Moses & Cavan, Russell Fillner, argued, Billings, for appellant.

Patrick F. Hooks, argued, Townsend, James, Crotty & Fopp, Great Falls, Bolkovatz & Romine, William Romine, appeared, Helena, for respondent.

The HONORABLE BERNARD W. THOMAS, District Judge, sitting for MR. JUSTICE CASTLES, delivered the Opinion of the Court.

This is an appeal from a decree which granted plaintiff a divorce, but which favored defendant in its provision for custody of the minor children of the parties and required the conveyance to defendant of plaintiff's interest in jointly owned property. Neither party contests the decree insofar as it grants the divorce. By this appeal plaintiff attacks those provisions of the decree which relate to custody and property.

The parties were married on March 17, 1946, and became the parents of three daughters. Joyce, the eldest, was of legal age at the time the decree was entered. The second daughter, Betty, has become of full age since that time. The dispute over custody now involves only the youngest daughter, Kathryn, 12 years of age at the time of trial in 1969, who has been with her father since a date following the entry of the decree.

At the time of the divorce, defendant was 47 years of age, a practicing lawyer for almost twenty years, and the senior partner in a firm of three lawyers. Plaintiff, at that time, was 42 years of age, with some college education but no degree. For about twenty years she had no employment experience outside the home, except as an employee of the legislature during part of the 1969 session. She handled the household accounts, collected rentals, and otherwise participated in the management of certain real properties which the parties had acquired.

After a four day trial, the district court made its findings of fact and conclusions of law and entered its decree. Certain of the findings, which have adequate support in the record, are quoted as follows:

"9.   That plaintiff and defendant for a period of three years prior to the commencement of this action have engaged in violent and uncontrolled verbal and physical quarrels, some of which were had in the presence of one or more of their children.

"10.   That the family relationship of the parties had totally deteriorated, due in large part to plaintiff's morbid suspicion of improper conduct by defendant.

"11.   That plaintiff has communicated her suspicions to the three children of the parties, to certain employees of defendant, to certain members of defendant's professional and business community, and to some of defendant's clientele and prospective clients.

"12.   That plaintiff's suspicion prompted her to make accusations that were of such a nature as to seriously damage defendant's professional integrity and dignity and to cause defendant loss of professional and business standing.

"13.   That due to loss of business and due to plaintiff's failure to recognize the true financial plight of the defendant, bills in a substantial amount have been incurred by plaintiff, and defendant has become deeply obligated to meet his family and business obligations.

"14.   That to enable the defendant to restore his business and credit rating, and to enable him to meet the obligations herein imposed, it is necessary that certain properties now owned by plaintiff and defendant as joint tenants, be transferred to defendant."

The district court found plaintiff was entitled to certain items of personal property and except for those items ordered "that the plaintiff shall forthwith execute instruments necessary for granting to the defendant such right, title and interest as she may have in each and every parcel of property, whether it be real, personal or mixed." The court further ordered that defendant should assume and pay all family debts, pay plaintiff's counsel fees and $500 monthly alimony; awarded defendant custody of the minor daughters, and required plaintiff to seek psychiatric counseling.

Plaintiff moved for a new trial, for amended findings of fact and conclusions of law and for stay of execution pending hearing, which motions were denied.

We believe that the issues presented for determination on this appeal may be stated as follows:

1. Does the district court in a divorce action have the power to divest a wife of her title and interest in specific property and to provide for alimony in lieu of the wife's property interest? The parties have also put up as an issue whether it is necessary to have findings or evidence of an implied trust for the benefit of the recipient, here the husband.

2. If the court has such power, what pleading requirements must be met before that power can be exercised?

3. If the court has such power and the pleading requirements were met in this case, did the district court abuse its discretion in exercising the power in the way it did?

4. Did the court abuse its discretion in awarding custody of the minor children to defendant?

The power of the district court to determine or adjust property interests of the parties in divorce cases has been the subject of several decisions by this Court. In earlier decisions, the view was taken that the district court had no such power in the absence of an enabling statute. Rufenach v. Rufenach, 120 Mont. 351, 185 P.2d 293; Emery v. Emery, 122 Mont. 201, 200 P.2d 251. Later, in Rogers v. Rogers, 123 Mont. 52, 209 P.2d 998, this Court upheld a judgment in a divorce action which required a money payment from wife to husband. In Johnson v. Johnson, 137 Mont. 11, 349 P.2d 310, it was held that, where the presumption of a gift is rebutted, the district court may award the wife a part of what she contributed in accumulating property of the husband by requiring the husband to make a cash payment to the wife. The majority opinion in *Johnson* expressed the view that a divorce court is a court of equity and once equity takes jurisdiction, it will grant complete relief; also that property acquired jointly during the marriage may be divided by the court whether the title thereto is in either or both

of the parties. This view was adhered to in Chapman v. Chapman, 137 Mont. 544, 354 P.2d 184, although in that case this Court found the pleadings insufficient to uphold the judgment as to the property.

In Tolson v. Tolson, 145 Mont. 87, 399 P.2d 754, this Court was asked to overrule *Johnson* and *Chapman* and revert to the rule expressed in *Emery*. Under the facts of *Tolson*, the Court found it unnecessary to make this choice. The new rules of civil procedure had become effective following *Chapman*, and Rule 18(a), M.R.Civ.P., permits a broad joinder of claims. Under Rule 18(a) the Court held a claim for divorce can be joined with a claim for adjudication of property rights, regardless of any previous rule restricting the authority of a court to adjudicate property rights in a divorce action. The rationale of *Tolson* has been followed in subsequent cases. See Bloom v. Bloom, 150 Mont. 511, 437 P.2d 1; Hodgson v. Hodgson, Mont., 482 P.2d 140, 28 St.Rep. 195. In these later cases the Court approved the allocation of properties between the parties on an equitable basis according to their contributions even though this required that title be divested from one and transferred to the other.

Plaintiff contends, in effect, that the court's action in this case cannot be based on Rule 18(a), since that rule applies only in cases where the facts show that a separate property claim, such as a claim for partition or for an implied trust, actually exists, and there is no showing of that kind here.

In this case the parties held title to three parcels of real property in joint tenancy: the family residence and an office building in Helena, and a residence formerly occupied by them at Thompson Falls. The defendant testified ''All of my real property is in my name and my wife's as joint tenants, and I did this for personal reasons and for reasons of marital * * *. I am trying to do something to help the marital situation. However, the entire contributions to all of it was mine as far as I know.'' No effort was made to rebut the presumption that a gift to the plaintiff wife was made when the joint tenancy estates in these

properties were created. We do not feel it necessary to determine that there is a resulting or constructive trust raised. Here, the court was using the only means available to guarantee payment of the wife's alimony. Without the conveyance of the property to reestablish the defendant's ability to pay, such an equitable solution could not be achieved under the circumstances here.

Although the district court in the case before us made a division of personal property, its action goes beyond the division or partition of property between the parties. It divests plaintiff of her entire interest in real property not on any theory of partition or any finding of a constructive or resulting trust, but in order to enable defendant to restore his business and credit rating and to enable him to meet the obligations imposed, including the payment of alimony to plaintiff. The question is whether the court can take this action on the authority of Rule 18(a). That rule is one of procedure, which allows the joinder of claims each of which might be an independent cause of action. It does not provide a new grant of power to the court nor create any new causes of action. We believe this case requires us to return to the challenge presented to and passed over by the Court in the *Tolson* case. We now hold that a district court in a divorce action has equitable powers to adjust property interests of the parties, and in so doing we affirm *Johnson* and overrule *Emery* on this point. We further hold that in the exercise of such powers the court, under proper circumstances, may completely divest the wife of her interest in property and provide for the payment of alimony in lieu thereof.

This Court has held that no particular pleading is necessary to raise the question of equitable division of property. Hodgson v. Hodgson, supra. No different rule is required in the case before us. Any pleading is sufficient which gives notice of the intention of the pleading party to invoke the equitable powers of the court for an adjustment of the property interests of the parties. The pleading need not ask the specific relief which the court in its discretion may decide is required under the facts of the situation.

Rule 54(c), M.R.Civ.P., provides:

"\* \* \* Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his·pleadings."

In this case, the complaint asks that defendant be required to make an inventory of his property and the prayer of the complaint contains the following language:

"That upon a final hearing of this cause, the said defendant be ordered, directed and decreed to pay the plaintiff such further sums, in the nature of alimony for her support and maintenance; and/or in lieu thereof, to make a division of the property of the plaintiff and defendant that to this court shall seem just and reasonable."

Defendant filed an answer and counterclaim and in the second claim of his "counterclaim" he alleged that the parties had accumulated certain property during their marriage, mostly as a result of his hard work and unusual efforts; that plaintiff's contribution had been slight and in recent months entirely negative, because of her harassment of defendant, wasteful and improvident habits and slander of defendant's good name, "all to his great financial loss \* \* \* incurring of indebtedness, and diminishing of his law practice"; that plaintiff was unable to control her finances and had incurred large bills in the name of defendant; that because of her incompetency the court should not transfer any property to plaintiff, except for personal effects and household goods.

Further, defendant alleged as follows:

"Any and all real property necessary for defendant's profession should be transferred to him at this time, free of dower interest or other claim by plaintiff, but other real property in joint tenancy may be held under supervision until the same can be sold or other disposition made."

The pleadings of the parties show that each of them expected the court to make some order relative to the property,

although they may not have contemplated the particular action taken, and they are sufficient to invoke the equitable powers of the court to deal with the property of the parties.

The district court having acted within its powers under sufficient pleadings, did it abuse its discretion in divesting plaintiff of her interest in the joint tenancy property?

The evidence is clear that during the months preceding the trial and due in large part to plaintiff's actions, defendant's income from his law practice had been greatly reduced, he was heavily indebted, and his creditors were pressing him; the joint tenancy property was encumbered in a substantial amount. It also shows that during this period plaintiff continued her expenditures at the same rate as during the better days. The trial court had good reason to conclude that plaintiff was not an able manager of money and that her interests could be best served if she were provided with a monthly alimony payment. The court was entitled, if not required, to consider the long-range interests of the plaintiff and of the daughters, and was justified in determining that the restoration of defendant's financial health and earning capacity was essential to their welfare. We can see no abuse of discretion in the district court's action under the equities and circumstances existing in this case.

Turning to the issue of the custody of the minor daughter, Kathryn, we consider plaintiff's contention that the district court abused its discretion in awarding custody to defendant because in making its award the court disregarded the preference of the child, the statutory rules on awarding custody of minors, and the testimony of two neighbors that plaintiff was a good mother.

Section 91-4515, R.C.M.1947, insofar as is pertinent here, reads as follows:

"In awarding the custody of a minor * * * the court or officer is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare, and if the child be of sufficient age to form an intelligent pref-

erence, the court may consider that preference in determining the question.

"2. As between parents adversely claiming the custody * * * neither parent is entitled to it as of right; but other things being equal, if the child be of tender years, it should be given to the mother * * *."

■ ■ Under this statute, the first consideration is the best interest of the child in respect to its temporal and mental and moral welfare. The court is not bound by the preference expressed by the child, and it is required to give the mother custody of a child of tender years only when other things are equal, that is, when there is no evidence to show that the child's welfare would benefit more from the father's custody than from the mother's. It is not necessary that the mother be found unfit to have custody. If the court can reasonably conclude from the evidence that the welfare of the child will be better served by awarding custody to the father, that is enough to move the court's discretion. Here the preference of the child was considered, even though not followed. The evidence supports the findings of the district court as to emotional instability on the part of plaintiff and as to her morbid suspicion of improper conduct by defendant, which suspicions she had communicated to her children. Since there is competent evidence to support the finding that the welfare of Kathryn would be best served by awarding her custody to defendant, we find no abuse of discretion in the custody award.

No issue having been raised in plaintiff's brief or argument relative to the award of certain real property to Walter Bolkovatz by the judgment below, we find it unnecessary to discuss that matter, in view of our decision on the other issues.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, DALY, and HASWELL, concur.

MR. JUSTICE CASTLES not participating.