WALTER J. ROTHSCHILD, Judge.
 

 12This is an appeal from judgments of the trial court partitioning the community property between Kathleen Finney Becnel and Robert M. Becnel. For the reasons stated more fully herein, we affirm in part, amend in part and reverse and vacate in part the trial court’s judgments.
 

 Kathleen Finney Becnel and Robert M. Becnel were divorced by judgment rendered on October 30, 1995. Thereafter, on November 3, 1995, Ms. Becnel filed a Petition for Partition of the Community Property. In December of 1995, she also sought and obtained injunctive relief prohibiting Mr. Becnel from alienating, transferring or disposing of any assets of the community pending the partition thereof. A sworn descriptive list of assets and liabilities of the community was filed into the record on September 29, 2000. In 2005, Mr. and Ms. Becnel each filed into these proceedings a separate supplemental descriptive list. In May of 2005, the parties executed a consent judgment for a partial partition of the property which was signed by the trial court on July 5, 2005. In 2007 and again in 2009, Ms. Becnel filed supplements to the descriptive list of assets and liabilities of the |scommunity. The record also contains a Joint Descriptive List which was used at trial in the partition.
 

 Trial of the community property partition was held on January 8-9, 2009. The matter was taken under advisement by the trial court and judgment was rendered on June 10, 2009, determining the claims of the parties and ordering both parties to file amended proposed allocations of community assets based on these findings. Ms. Becnel moved for a partial new trial
 
 *22
 
 which was denied by the trial court on August 18, 2009. On August 31, 2009, the trial court rendered judgment that the community be divided in accordance with the proposed allocation of community assets submitted by the parties. Ms. Becnel was granted a devolutive appeal from these judgments.
 

 Ms. Becnel assigns the following errors:
 

 1. The trial court erred in denying her claim for damages in connection with Mr. Becnel’s sale of Hibernia Bank stock in violation of the injunction against alienation of community property;
 

 2. The trial court erred in denying Ms. Becnel’s claim for dividends on the Hibernia Bank stock which were received by Mr. Becnel after termination of the community and those dividends which would have been received if the stock had not been improperly sold;
 

 3. The trial court erred in denying Ms. Becnel’s claim for prejudgment interest in connection with Mr. Bec-nel’s sale of Hibernia Bank stock and in connection with legal fees and costs received by Mr. Becnel after the community terminated;
 

 4. The trial court erred in holding the partition proceedings open regarding a $100,000 community liability owed to Mr. Becnel’s brother; and
 

 5. The trial court erred in denying Ms. Becnel’s motion for partial new trial.
 

 14Sale of Hibernia Bank Stock
 

 Testimony at trial indicated that during the community, Robert M. Becnel owned shares of stock in Bank of St. John, which later merged with Hibernia Bank.
 
 [1]
 
 The testimony and evidence indicated that as of July 1, 1995, the Becnels held 27,110 shares of Hibernia Bank stock which emanated from the original Bank of St. John stock. The testimony further indicated that on February 18, 2000, after the termination of the community, Mr. Becnel sold the Hibernia Bank stock and received two payments totaling $243,903.00. Further, the evidence shows that in November of 2005, Hibernia Bank merged with Capital One Bank.
 

 In the Joint Descriptive List, Ms. Becnel made a claim for damages in connection with losses incurred by Mr. Becnel’s February 2000 sale of the 27,110 shares of Hibernia Bank stock. The amount of the claim was for $523,358.00 or one-half of $1,046,746, which would have been the amount of the value of the Capital One stock including legal interest had Mr. Bec-nel held the stock on the date of trial.
 

 In its judgment of June 10, 2009, the trial court resolved Ms. Becnel’s claim as follows:
 

 The evidence does not, in this Court’s view, show mismanagement by Mr. Bec-nel. Hindsight is always 20-20, and the management of a community as large as this requires decisions which may not always be successful, but nevertheless may be reasonable given the time and circumstances of the event. Handling assets such as stocks may be difficult with no guarantees offered.
 

 The claims of losses by Mrs. Becnel through the calculations of her accountant are speculative and not acceptable by this Court.
 

 The Court will value these shares of stock at the price for which they were
 
 *23
 
 sold, namely, $243,903.82, each party entitled to 50% thereof.
 

 |sBy this appeal, Ms. Becnel argues that the trial court’s findings regarding her reimbursement claim are erroneous. In support of this claim, Ms. Becnel relies on La. C.C. art. 2369.3 which provides:
 

 A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.
 

 In refusing Ms. Becnel’s claim, the trial court found that Mr. Becnel’s actions in selling the Hibernia Bank stock did not amount to mismanagement which resulted in any losses to the community. Ms. Bec-nel now argues that the trial court misapplied La. C.C. art. 2369.3 and erroneously failed to find that Mr. Becnel breached his duty to preserve the assets of the community. Further, Ms. Becnel argues that Mr. Becnel violated an injunction which enjoined alienation of the community property and that she is entitled to damages pursuant to La. C.C.P. art. 3611. Ms. Becnel argues that these are legal errors which require this Court to conduct a
 
 de novo
 
 review of the record.
 

 We fail to find legal error in the application of the pertinent statute in this case. Rather, we find that the trial court made a factual finding that Mr. Becnel’s actions did not violate the statutory provisions. Accordingly, we find no basis for a
 
 de novo
 
 review.
 

 This Court held in
 
 Saacks v. Saacks,
 
 05-365 (La.App. 5 Cir. 9/26/06), 942 So.2d 1130, 1134-36:
 

 It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. The trial judge is |fiafforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses.
 
 Kambur v. Kambur,
 
 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99. A court of appeal may not set aside a trial court’s finding of fact in absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989);
 
 Madere v. Madere,
 
 93-610 (La.App. 5 Cir. 2/9/94), 632 So.2d 1180.
 

 [[Image here]]
 

 La. C.C. art. 2369.3, comment (a) notes that this article imposes a higher standard of care in managing and maintaining former community property than the standard imposed during the marriage. The reason for the higher standard of care is that, after termination of the community property regime, the presumption that a spouse will act in the best interest of the community no longer exists.
 
 Knighten v. Knighten,
 
 00-1662 (La.App. 1 Cir. 09/28/01), 809 So.2d 324,
 
 writ denied,
 
 01-2846 (La.01/04/02), 805 So.2d 207.
 

 The spouse alleging improper management bears the burden of proving that the former spouse failed to manage and prudently preserve the former community property prior to partition.
 
 Anding v. Anding,
 
 32,084 (La.App. 2 Cir. 8/18/99), 740 So.2d 253;
 
 Drobnak v. Drobnak,
 
 97-0021 (La.App. 1 Cir. 2/20/98), 708 So.2d 1162. La.C.C. art. 2369.3, comment (c) provides that a spouse who asserts a claim under this article is required to prove that the other spouse failed to act prudently in a manner consistent with the mode of use
 
 *24
 
 of the property under his control immediately prior to termination of the regime, not simply that he had former community property under his control. Bad faith is not required under La. C.C. art. 2369.3 because the spouse is “answerable for any damage caused by his fault, default or neglect.”
 
 Gibson v. Gibson,
 
 96-1472 (La.App. 3 Cir. 4/02/97), 692 So.2d 708, 710.
 

 The question for our review is whether Ms. Becnel met her burden of proving that Mr. Becnel failed to preserve and manage prudently the Hibernia stock prior to the partition. To meet this burden, Ms. Bec-nel submitted the testimony of Michael Kingsberry, a CPA who had been 17accepted as an expert by the trial court. Mr. Kingsberry testified that Mr. Becnel sold 27,110 shares of Hibernia Bank stock in violation of an injunction in February of 2000. Mr. Kingsberry also testified that if Mr. Becnel had not sold the stock and had held it through the bank’s merger with Capital One Bank, the stock would have been worth $1,046,715.00 at the time of trial including legal interest. Mr. Kings-berry testified that half of this amount, or $523,358.00, is the basis for the reimbursement claim made by Ms. Becnel in the Joint Descriptive List. Mr. Kingsberry also testified regarding two alternative claims made by Ms. Becnel regarding the sale of this stock. First, Mr. Kingsberry calculated legal interest through 2008 on the amount received by Mr. Becnel from the stock sale in 2000, $243,904.00. This interest amounted to $151,392.65, for a total of $395,296.65, and Ms. Becnel’s half would amount to $197,649.00. The second alternative claim amounted to $169,157.50, which according to Mr. Kingsberry represented one-half of the amount of the value of the stock had Mr. Becnel held it on the date of trial.
 

 Although the testimony at trial indicates that the value of the Hibernia stock increased after the bank’s merger with Capital One, we fail to find that this fact supports a finding that Mr. Becnel’s actions in selling the stock amounts to mismanagement. As the trial court stated, the increase in value became evident in hindsight, and there is nothing in the record to indicate that Mr. Becnel should have known that the stock value would increase. Further, Ms. Becnel claims that Mr. Bec-nel’s sale of the stock amounted to a violation of La. C.C. art. 2369.3 in failing to “preserve” the stock under his control. However, the article does not prohibit sale of former community property. The full text of the article requires the former spouse to preserve |sthe property “in a manner consistent with the mode of use of that property immediately prior to termination of the community regime.”
 
 See,
 
 La. C.C. art. 2369.3, comment (c). Our review of the record fails to indicate that Ms. Becnel met her burden of proving her entitlement to damages.
 

 Ms. Becnel also argues that her reimbursement claim should have been granted as damages for Mr. Becnel’s violation of the injunction issued in this case prohibiting him from alienating the former community property. La. C.C. P. art. 3611 provides:
 

 Art. 3611. Penalty for disobedience; damages
 

 Disobedience of or resistance to a temporary restraining order or preliminary or final injunction is punishable as a contempt of court. The court may cause to be undone or destroyed whatever may be done in violation of an injunction, and the person aggrieved thereby may recover the damages sustained as a result of the violation.
 

 The record in this case indicates that an injunction was issued by the trial court in
 
 *25
 
 December of 1995. Ms. Becnel argues that this injunction was still in effect in 2000 when the stock was sold by Mr. Becnel, citing
 
 Hendrick v. Hendrick,
 
 470 So.2d 449 (La.App. 1 Cir.1985). While we agree that injunctive relief remains as long as the necessity for it continues, we fail to find Ms. Becnel entitled to recover damages as part of the partition of the community property.
 

 Although the Hibernia stock was sold by Mr. Becnel in February of 2000, Ms. Bec-nel failed to move for contempt or to request the trial court impose appropriate damages for this alleged violation of the injunction. For various reasons, this claim for damages was not made prior to these partition proceedings, almost 10 years after the stock was sold. At this point in the ^proceedings, we fail to find that Ms. Bec-nel’s current reimbursement claim to be appropriate damages for violation of the injunction.
 

 The damages sustained by Mr. Becnel’s share of the stock are too speculative to support an award of damages in this case. We therefore find no error of the trial court in denying Ms. Becnel’s claim for reimbursement based on the sale of the Hibernia Bank stock.
 

 Dividends
 

 Ms. Becnel next claims that she is owed reimbursement for dividends paid on the Hibernia Bank stock between the termination of the community and the date the stock was sold by Mr. Becnel. We agree.
 

 At trial, Mr. Kingsberry testified that Ms. Becnel’s claim for loss of dividends could be divided into two components. First, Mr. Kingsberry calculated the amount of dividends that would have been paid on the Hibernia stock between 2000 and 2005 had Mr. Becnel held the stock during this period prior to the bank’s merger with Capital One. This claim was for $45,905.54, which Mr. Kingsberry stated was one-half of the total dividends, or $91,905.94, the amount that would have been paid during the period. Secondly, Mr. Kingsberry calculated the amount of dividends actually paid on the stock after the termination of the community but prior to the time Mr. Becnel sold the Hibernia stock. Ms. Becnel claimed $21,552.45, or one-half of the actual dividend payment of $43,104.90.
 

 The record contains an exhibit admitted during the testimony of Mr. Kingsberry without objection by Mr. Becnel. This document lists the dividends which were paid on the 27,110 shares held by Mr. Becnel between July 28, 1995 and November 1, 1999. At trial, Mr. Becnel did not dispute that he received dividends on the Hibernia Bank stock in his possession | inbetween the termination of the community and the subsequent sale of the stock. There is also no dispute that as fruits of the community property, Ms. Becnel is owner of one-half of these payments. La. C.C. art. 2369.2.
 

 The Joint Descriptive List contained in the record fails to account for this asset, although Ms. Becnel’s claim for reimbursement for one-half of the actual dividend payment of $43,104.90 is clearly supported by testimony and evidence in the record. However, the dividends which would have been paid between 2000 and 2005 had the stock not been sold are speculative and not clearly supported by the record. We therefore find that the trial court erred in denying Ms. Becnel’s claim for reimbursement in the amount of $21,552.45, and the trial court’s judgment of June 10, 2009 is hereby amended to include this item.
 

 PreJudgment Interest
 

 Ms. Becnel contends that the trial court erred in denying her claim for prejudgment interest on the proceeds from
 
 *26
 
 the sale of the Hibernia Bank stock and on community legal fees and costs received by Mr. Becnel after the community terminated. Ms. Becnel argues that the trial court should have awarded Ms. Becnel interest on the proceeds from the sale of the Hibernia Bank stock from the date of sale, which the uncontroverted testimony of Ms. Becnel’s expert accountant, Michael Kings-berry, calculated to be $197,648.32 in interest. Additionally, Ms.-Becnel should be awarded interest on the community legal fees and costs recovered by Mr. Becnel following termination of the community, which Mr. Kingsberry calculated to be $507,553 in interest.
 

 |nIn denying her claim for pre-judgment interest, Ms. Becnel contends that the trial court erred on relying on the Supreme Court’s decision in
 
 Reinhardt v. Reinhardt,
 
 99-723 (La.10/19/1999), 748 So.2d 423 as that decision only applies to equalizing payments which arise upon partition of the community. Ms. Becnel contends the facts in
 
 Reinhardt
 
 are distinguishable from the facts of the present case. In the present case, Ms. Becnel argues that the assets were not valued in this case at the time of the partition, but rather at the time the assets became available to Mr. Becnel.
 

 We find the decision in
 
 Reinhardt
 
 to be controlling in the present case. In that case, the Supreme Court found that reimbursement claims are among the types of claims that arise from the legal regime and which are properly asserted in a community property partition.
 
 Reinhardt v. Reinhardt,
 
 748 So.2d at 425. Although the funds and legal fees claimed by Ms. Becnel may have been received by Mr. Becnel prior to the trial on the partition, they were not classified as community property subject to a reimbursement claim until the date of judgment in this case. Thus, according to the rationale set forth in
 
 Reinhardt,
 
 pre-judgment interest is not applicable. The ruling of the trial court on this issue is not erroneous.
 

 Holding Partition Proceedings Open
 

 Ms. Becnel next contends that the trial court erred in holding open the proceedings with regard to Mr. Becnel’s claim that he has a $100,000 liability in the form of a debt owed to his brother, Mr. Danny Becnel. This liability is listed on the Joint Descriptive List as “Daniel E. Becnel, for services provided in the breast implant cases.”
 

 Robert Becnel testified at trial that he owed $100,000 to his brother for legal work done in personal injury claims against Dow Corning. 112However, the testimony indicated that Dow Corning was involved in bankruptcy proceedings, and the legal fees for these claims had not yet been collected. Mr. Becnel testified that the amount of this debt was set in 1998 by verbal communication with his brother. There was no writing evidencing the obligation. Ms. Becnel contends that as Mr. Becnel was unable to prove the existence of this claim at the trial of this matter, the claim should have been denied.
 

 In its judgment of June 10, 2009, the trial court found that it was unclear from the testimony and evidence presented whether this was a valid community debt and whether it has been paid, or was still outstanding. However, the trial court held the matter open for a subsequent determination of the existence and status of the alleged debt.
 

 We find the trial court correctly found that the record failed to evidence a valid community debt owed by Mr. Becnel to his brother. According to Mr. Becnel’s testimony, the debt was incurred in 1998 or shortly before, which in any event is several years after the termination of the community. Further, the debt was only evidenced by the testimony of Mr. Becnel,
 
 *27
 
 and our review of the record indicates that Mr. Becnel failed to meet his burden of proving the liability. In the settlement of the community and the partitioning of community property, the court must value the assets, determine the liabilities, adjudicate the claims of the parties, and then divide the community assets and liabilities between the parties. La. R.S. 9:2801(A).
 

 As the evidence presented at trial failed to support a community liability, the claim should have been denied. There is no legal basis for holding this matter open for the liability to be established at a later date. 1 ^Accordingly, we hereby vacate the trial court’s decision to hold this matter open for further evidence of the debt. Mr. Becnel’s listing of the liability is denied.
 

 Motion for Partial New Trial
 

 Ms Becnel moved for a partial new trial following the trial court’s judgment on June 10, 2009 regarding the contested issues between the parties at the partition trial. Ms. Becnel argued that the trial court judgment was contrary to law and evidence presented at trial. The arguments made by Ms. Becnel in the motion for new trial are substantially similar to the arguments advanced by this appeal. We fail to find that the trial court’s findings as stated in its June 10, 2009 judgment are contrary to law or evidence. Further, after review of the entire record in this case, including all pleadings and the transcripts of partition trial, we find no good ground for the granting of a new trial. Accordingly, we find no error in the trial court’s ruling denying Ms. Becnels’ motion for partial new trial.
 

 Decree
 

 For the reasons assigned herein, we hereby reverse that portion of the June 10, 2009 judgment which denies Ms. Becnel’s claim for reimbursement as stated in Item 33 of the Joint Descriptive List: dividends earned on community Hibernia Bank stock after the termination of the community to the date of the sale of this stock (dividends received by Robert M. Becnel). We hereby grant this claim for reimbursement and amend the Allocation of Assets and Liabilities to allocate an additional $21,552.5 to Kathleen Finney Becnel. We also vacate that portion of the trial court’s June 10, 2009 judgment which holds open the proceedings with regard to the $100,000 liability to Daniel E. Becnel, Jr. Mr. Becnel’s claim of that liability is | thereby denied. In all other respects, the judgments of the trial court are affirmed. Each party shall bear its own costs of this appeal.
 

 AFFIRMED IN PART; AMENDED IN PART; REVERSED AND VACATED IN PART
 

 [1]
 

 . The trial court determined that this stock was community property, and this finding is not the subject of this appeal.